**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| CITY OF NORTH LITTLE ROCK, ARKANSAS | PLAINTIFF |
| v.   No. 4:10CV01689 JLH | |
| UNION PACIFIC RAILROAD COMPANY; and ARKANSAS MIDLAND RAILROAD COMPANY, INC. | DEFENDANTS |

**OPINION AND ORDER**

The City of North Little Rock, Arkansas, commenced this action in the Circuit Court of Pulaski County, Arkansas, seeking to acquire an easement on railroad property for a pedestrian and bicycle trail through the power of eminent domain. The defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. Subsequently, Arkansas Midland Railroad Company filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. 12(b)(1) arguing that the Interstate Commerce Commission Termination Act of 1995 vests exclusive jurisdiction over the action in the Surface Transportation Board, preempts Arkansas law, and divests both state and federal courts of jurisdiction. Union Pacific Railroad Company filed a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6) making the same arguments as Midland and adding that North Little Rock's proposed taking violates the Dormant Commerce Clause of the United States Constitution and Section 22 of Article 2 of the Arkansas Constitution. Both defendants have incorporated each other's arguments into their own motions.

The property in question contains a 100 foot wide railroad right-of-way located on "certain lands lying southeast of East Washington Avenue and Vance Street in North Little Rock, Pulaski

County, Arkansas" owned by Union Pacific. Midland leases this property and operates a railroad line. According to the complaint, the City seeks:

> A 30 foot wide right-of-way for a bike path/walking trail on lands owned by Union Pacific Railroad and leased to the Arkansas Midland Railroad, said lands lying in Section 6, Township 1 North, Range 11 West, and Section 31, Township 2 North, Range 11 West, and Spanish Grant #2431, all lying in the City of North Little Rock, Pulaski County, Arkansas, said easement centerline being more particularly described as follows:
>
> Commencing at a point which is the intersection of the centerline of Baucum Pike (Hwy. #165) and the centerline of the Union Pacific Railroad property; thence N 67°30'00" West 21.0 feel; thence S 22° 30' 00" West 45.0 feet to the point of beginning, said point being 15 feet South of the Southerly right-of-way line of said Baucum Pike; thence N 67°30'00" West on a line that is 15 feet South of and parallel with said Southerly right-of-way of said Baucum Pike, a distance of 183.14 feet to the point of curvature of a 1,493.76 foot radium curve to the left; thence along said curve to the left, a chord bearing and distance of S 83°57'31" West 130.12 feet to the point of tangency; thence S 80°44'16" West and on a line that is 15 feet South of the North right-of-way of said Union Pacific Railroad Properly, a distance of 3122.00 feet; thence N 68°59'44" West 90.00 feet; thence S 73°39'18" West 245.15 feet to the end of this easement, containing 59,113.15 square feet or 1.36 acres, more or less.

Midland is a short-line rail carrier operating on small, branch lines. It retrieves loaded railroad cars from shippers and delivers them to interstate carriers, such as Union Pacific, for transportation to destinations in other states. Midland has a two mile track, the Ashgrove lead, running through the property with the center of the track located 50 feet from the boundary of the property. The proposed easement cuts across the Ashgrove lead adjacent to Baucum Pike. It then runs alongside the track between the boundary of the railroads' property and the Ashgrove lead.

An additional track, the team track, separates from the Ashgrove lead and runs parallel with it. The team track is primarily used to park overflow railcars and for transloading, that is, moving product from railcars to trucks and vice versa. The center of the team track is 17 feet 7 inches from the center of the Ashgrove lead. A freight car on the team track normally extends another 5.5 feet

from the center of the team track.  With a train upon it, the team track extends about 23 feet from the Ashgrove lead.  Thus, there are only about 27 feet between the team track and the boundary of the railroads' property.  The proposed 30 foot wide easement overlaps with the team track.  Charles Laggan, vice president and general manager of Midland, testified that granting the easement would render the team track unusable.

Part of the railroad property at issue is adjacent to East Washington Avenue.  Midland uses a portion of this area as a transloading facility.  Trucks drive onto the railroads' property from East Washington Avenue to load cargo onto and to unload cargo from railroad cars located on the team track.  The evidence established that the transloading operations use most or all of the railroads' property between the team track and Washington Avenue in this area.  The proposed easement encroaches upon this area.

Midland operates a switch stand where the Ashgrove lead and the team track join.  The switch stand extends beyond the tracks onto the property that would be taken by the proposed easement.

Should a derailment occur on the team track or the Ashgrove lead, the railroad would likely need to bring large equipment onto the proposed easement.  In response to evidence that the City might build a fence to separate the bicycle trail from the railroad track, Laggan testified any fence would interfere with Midland's ability to bring in the large equipment needed in the rerailing process.  Even the trail itself could constitute an obstacle because the necessary equipment would likely damage the trail.  Laggan testified that the railroad switch itself is a high-risk area for derailments.  Laggan also testified that the construction of a trail on the proposed easement would

severely impact Midland's ability to conduct transloading and switching operations and to deal with derailments.

The ICCTA states:

The jurisdiction of the Board over--

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). The term "transportation" has been defined broadly in the ICCTA to include:

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property[.]

49 U.S.C. § 10102(9). Courts have said that " '[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations' than the language contained in Section 10501(b)." *Union Pac. R.R. Co. v. Chi. Transit Auth.*, No. 07CV229, 2009 WL 448897, *5 (N.D. Ill. Feb. 23, 2009) (citing *CSX Transp. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga.1996)). *See also City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998); *Soo Line R. Co. v. City of St. Paul*, 2010 WL 2540695, *3 (D. Minn. June 17, 2010); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wis. 2000); *City of*

*Creede, CO-Pet. for Declaratory Order*, STB Finance Docket No. 34376, 2005 WL 1024483, *4 (S.T.B. May 3, 2005).

The evidence demonstrates that the proposed easement could interfere with Midland's ability to operate its team track as well as its transloading and switching facilities and could interfere with efforts to address derailments. Whether to allow the taking is a decision that, on these facts, involves the regulation of rail transportation. Congress has vested exclusive jurisdiction over the regulation of rail transportation in the Surface Transportation Board.

Therefore, the defendants' motions to dismiss are GRANTED. Documents #4 and #9. This action is dismissed without prejudice.

IT IS SO ORDERED this 21st day of April, 2011.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE